McKNIGHT et al. v. NEW ORLEANS COAL & BISSO TOWBOAT CO.*

No. 5818.

Circuit Court of Appeals, Fifth Circuit.

April 5, 1930.

*Rehearing denied May 12, 1930.

Herbert W. Waguespack, of New Orleans, La. (W. J. & H. W. Waguespack, of New Orleans, La., on the brief), for appellants.

Philip S. Gidiere, of New Orleans, La. (Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

FOSTER, Circuit Judge.

This is a libel in personam brought by members of the crews of the tugs R. W. Wilmot and H. C. Cadmus to recover a portion of the compensation paid for the services of said tugs in floating the steamship Sapinero and the tug Bayport, which vessels were aground on a mud flat in the Gulf of Mexico, off the mouth of the Mississippi river,

and in towing them to New Orleans. It is contended by libelants that the services performed by the Wilmot and the Cadmus were salvage services, and therefore they are entitled to a portion of the compensation.

It appears that the tugs Wilmot and Cadmus were employed at an hourly rate of $35 and $25 respectively, payable at all events, to go from New Orleans to pull the stranded vessels off the mud flat and tow them to New Orleans. These were the rates usually charged for the services of the tugs in and about the harbor of New Orleans. A total compensation of $3,135 was earned and paid. There is uncontradicted testimony in the record that Captain W. A. Bisso, president of appellee, notified the captains of the tugs that they had been employed on an hourly basis, and that their services would not be salvage services; that this was made known to the crews before the tugs started from New Orleans, and that they were told that if any one wanted to make a claim for salvage to get off the boat.

While the stranded vessels were in very little danger, it may be conceded that the services were salvage services, although of a very low order. The fact that a contract was entered into would not prevent the court from making an award for salvage. Contracts for salvage services are always reviewable by the courts and an award may be made of more or less in order to do justice, according to the facts and circumstances of each case. The Camanche, 8 Wall. 448, 19 L. Ed. 397; The Tornado, 109 U. S. 110, 3 S. Ct. 78, 27 L. Ed. 874; The Elfrida, 172 U. S. 186, 19 S. Ct. 146, 43 L. Ed. 413.

But, of course, the general rule will not prevent holding the salvor to his contract, and this is true in respect of the crew as well as the owners of the vessel. In this case, the crews of the tugs performed no services other than those contemplated when the voyage was begun. They received their usual wages for the services they performed. They were not exposed to any danger not usual and incident to their calling, and the floating and subsequent towing of the stranded vessels presented no extreme difficulty and was easily accomplished.

It would be impossible for owners of tugs performing salvage services to make contracts at reasonable rates if they were to be required to pay a premium to their crews not contemplated when the undertaking was initiated. On the facts in this case, after embarking on the voyage with notice of the contract between the owner of the tugs and the owner of the stranded vessels, in equity and justice libelants must be held to have waived any claim for salvage.

Affirmed.